IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT BRAGDON,

    Plaintiff,                            No. CIV S-08-2705 EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                      ORDER
_____ /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, the court grants defendant's motion and denies plaintiff's motion.

I. BACKGROUND

        Plaintiff formally applied for SSI on December 19, 2005, alleging that he became disabled on April 5, 2004. Administrative Record ("AR") 7. Plaintiff's application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing. AR 27, 28, 45. On February 7, 2008, a hearing was held before administrative law judge ("ALJ") Stanley R. Hogg. AR 18-46. Plaintiff was represented by counsel at the hearing, and testified at the hearing. *Id.*

1

The ALJ issued a decision on April 14, 2008, finding that plaintiff was not disabled.[1]  AR 7-17.  The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since December 19, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

> \*\*\*

> 2. The claimant has the following severe impairments:  Seizure disorder, depressive mood disorder, borderline intellectual functioning, and obesity (20 CFR 416.920(c)).

> \*\*\*

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> \*\*\*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:
>    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

>     4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is capable of performing simple unskilled work while adhering to seizure precautions.
>
> ***
>
>     5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> ***
>
>     6. The claimant was born on August 10, 1958 and was 47 years old, which is defined as a younger individual age 45-49, on the date the SSI application was filed (20 CFR 416.963).
>
>     7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
>     8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>     9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).
>
> ***
>
>     10. The claimant has not been under a disability, as defined in the Social Security Act, since December 19, 2006, the date the application was filed (20 CFR 416.920(g)).

AR 7-17.

Plaintiff filed a Request for Review of Hearing Decision/Order with the Appeals Council on April 14, 2008, and the Appeals Council subsequently denied plaintiff's request for review in a Notice and Order of Appeals Council Action dated September 25, 2008. AR 1-3.

II. SUMMARY OF TESTIMONY

Plaintiff testified at the hearing before ALJ Hogg that he started having seizures in April 2004, and that he has numbness in his left side, which occurs at least 20-30 times per day and

makes it difficult to stand, walk or grasp any object. *Id.* at 33. Plaintiff also testified that during the numbness, his mind gets "delusional" and he "can't function." *Id.* He testified that he takes Dilantin to prevent a full-blown seizure, and that he can sit for half an hour or 45 minutes and walk for 5-10 minutes. *Id.* at 33-36.

Plaintiff also testified that he cannot concentrate well and has memory difficulties, and that he once left a faucet running and flooded his sister's kitchen. *Id.* at 36-37. He testified that taking care of himself is a challenge as far as bathing and getting dressed, but he manages. *Id.* at 38. Plaintiff's niece, who plaintiff lives with, does his grocery shopping and laundry for him, but he vacuums a little bit and can go shopping for a short period of time. *Id.* at 39. He spends time watching television and he sleeps about three hours per night and catnaps at least 10 times during the day. *Id.* at 40-41. His niece cooks dinner for him, and afterward, he goes for a five-minute walk. *Id.* at 41. Plaintiff testified that he was unable to do the work he used to do as a handyman, because he can't read a tape measure anymore or add or subtract. *Id.* at 42.

In addition to the numbness and seizures, plaintiff gets monthly shots for hepatitis C and takes Thiamine for arthritis in his hips. *Id.* at 4344. He testified that he used to drink alcohol, but doesn't anymore. *Id.* at 44-45.

III. RELEVANT MEDICAL EVIDENCE

On December 6, 2004, neurologist Asish Ghoshal, M.D., evaluated plaintiff for complaints of seizures. *Id.* at 197. Plaintiff told Dr. Ghoshal that, in April 2004, he was witnessed having a tonic-clonic seizure and was treated in the emergency room. *Id.* He said he was drinking on a daily basis at that time and had a history of cocaine abuse. *Id.* Dr. Ghoshal noted, subsequent to that, plaintiff had not had "any significant use of cocaine," but drank an average of 2 beers a day. *Id.* Plaintiff said he had two recurrent seizure episodes. *Id.* Plaintiff was taking Dilantin and reported no adverse side effects. Dr. Ghoshal noted plaintiff complained of some symptoms of numbness involving the right forearm, hand and thigh. *Id.* Plaintiff also reported experiencing "ascending symptoms of numbness or tingling involving the left leg" at

4

which time he felt near fainting. *Id.* He denied any motor deficits. *Id.*

Dr. Ghoshal's neurological examination was normal, including cognitive functioning, strength, and gait. *Id.* Dr. Ghoshal's impression was a history of generalized seizures and a questionable abnormality on a CT scan. *Id.* He planned to have plaintiff undergo an MRI and increased plaintiff's Dilantin dose. *Id.*

On January 24, 2005, Dr. Ghoshal noted plaintiff had not had any recurrent seizures and that he was taking Dilantin. *Id.* at 196. Plaintiff told Dr. Ghoshal that he had no generalized tonic-clonic seizures, but every day he experienced "episodes of left-sided tingling" lasting for a few minutes with no confusion or loss of consciousness only "some difficulty" with balance. Plaintiff told Dr. Ghoshal that he was applying for disability because he felt his episodes were not under good control. *Id.* Dr. Ghoshal stated that it was possible plaintiff was having focal sensory seizures, referred him to an epilepsy clinic, and indicated that plaintiff might eventually benefit from surgery. *Id.*

On March 10, 2006, Barry N. Finkel, Ph.D., performed a consultative examination and administered psychiatric tests. *Id.* at 198-201. Plaintiff reported left-sided weakness and numbness beginning "about four years ago," which was intermittent. *Id.* at 198. He said a doctor told him to stop drinking, he did and "experienced a series of grand mal seizures." *Id.* Dr. Finkel noted plaintiff "began treatment with Dilantin and does not report any subsequent seizures." *Id.* Plaintiff told Dr. Finkel he "smoked crack cocaine from age 28-33." *Id.* at 199. Dr. Finkel diagnosed a mood disorder secondary to medical issues with depressive features, alcohol dependence in 2-year remission, cocaine abuse/dependence in long-term remission and borderline intellectual functioning; and he assessed a Global Assessment of Functioning ("GAF") score of 65.[2] *Id.* at 200. Dr. Finkel also indicated plaintiff's attention and pace and his

---

[2] The GAF Scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." The American Psychiatric Association's Multiaxial Assessment, set forth in the Diagnostic and Statistical Manual of Psychiatric

ability to attend to a regular, 8-hour work day were moderately impaired. *Id.* at 201. He opined that plaintiff "can follow at least simple instructions" and was "able to attend to and follow through on at least simple tasks without direct supervision"; that plaintiff's concentration was "within normal limits"; and that plaintiff could "interact appropriately with supervisors and peers." *Id.*

On March 11, 2006, neurologist Steve McIntire, M.D., performed a consultative examination of plaintiff. *Id.* at 203-06. Plaintiff told Dr. McIntire that he started having seizures in 2004, and described his seizures as "a sense of numbness spreading over the left leg and arm" that did not spread above the head and lasted for 2-5 minutes, 20-30 times a day. *Id.* at 203. Dr. McIntire noted plaintiff was treated with Dilantin and that his "treatment history does not suggest difficult to control seizures." *Id.* Dr. McIntire's examination findings were normal. *Id.* at 204-05. He indicated that plaintiff's subjective account described only "possible partial seizures" and that they were "frequent episodes of sensory changes that involve the left side without significant alteration in consciousness." *Id.* at 205. Dr. McIntire opined plaintiff should not work at heights, over the water, or with very heavy machinery" but he should "be able to work in most capacities." *Id.* at 204-05.

IV. ISSUES PRESENTED

Plaintiff contends that the Commissioner erred in sustaining the ALJ's determination that he is "not disabled" because (1) the ALJ failed to provide clear and convincing evidence to discredit plaintiff; (2) the ALJ improperly ignored the limitations imposed by the psychological consultative examiner; and (3) the ALJ improperly discredited the Adult Third Party Report completed by plaintiff's niece. Dckt. No. 16 at 2.

////

---

Disorders, ("DSM-IV") (4th Ed. 2005), at 34. A GAF of 61 to 70 denotes "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has meaningful interpersonal relationships."

V.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

VI.  ANALYSIS

A.  Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing evidence for discrediting plaintiff. Dckt. No. 16 at 10. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the

disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). To support a lack of credibility finding, the ALJ must "point to specific facts in the record which demonstrate that [the claimant is in less pain or the claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008).

Here, the ALJ made specific findings regarding plaintiff's credibility, as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> As for the opinion evidence, with correct diagnosis and proper medication epileptic seizures are manageable. The claimant demonstrates a history of good seizure control.

////

> In his December 2005 Seizure Questionnaire, the claimant reported that he had a seizure every day for 2 1/2 years. His seizures lasted three minutes, and it took five minutes post seizure for him to resume normal activities. He acknowledged that he had been taking his medication properly and the medications prevented "full" seizures. In March of 2006, he reported to Dr. McIntire that he had four generalized tonic-clonic seizures in his life.
>
> The undersigned questions the veracity of the claimant's allegations and reports. He reported that he experiences left side numbness from his arm to his feet 20 to 30 times per day. In his Seizure Questionnaire, he reported that he had seizures every day for over two years. However, he reported to Dr. Ghoshal and Dr. Finkel that he had stopped having seizures once he started taking Dilantin. Clearly, the objective medical evidence does not support this allegation, and his credibility suffers as a result.
>
> Although he claims memory problems related to his seizure activity, the undersigned again questions his credibility. He told Dr. Finkel in March of 2006 that he stopped working in 1997. That same month he told Dr. McIntire that he stopped working in 2004. There is also evidence that he has been less than candid about his abuse of illicit drugs. He had reported being in remission, however, in July of 2006, he admitted he had a "one time use" of Cocaine .
>
> The claimant attended a face-to-face interview when he filed this claim and the SSA interviewer did not observe any severe impairment or behavior. The claimant attended the interview alone, and had ridden Regional Transit Light Rail to his appointment. He was fairly dressed and poorly groomed. He was 5'8 at 185 lbs. He appeared older than his age. He was nice and cooperative. He had great difficult with memory. He even called his niece, with whom he lived, to ask her what her child's name is because he forgot. He has lived with them for 2 years. He spoke clearly and made good eye contact. He was alert and even completed his 3368 Disability Report. He had poor grammar and spelling. The interviewer did not observe any other problems.
>
> ***
>
> In sum, the above residual functioning capacity assessment is supported by his lack of longitudinal potent medicinal regimen. He reported that he takes a few supplemental vitamins. He reported that if he takes his (seizure) medicine he is fine. The medical record of evidence does not demonstrate that he experiences full-blown seizures when he is taking his medications properly. The severity and pattern of his seizure activity is questionable based upon the evidence presented by the claimant.

AR 15-16 (internal citations omitted).

9

Ultimately, the ALJ concluded that plaintiff was not fully credible due to inconsistencies in plaintiff's testimony; inconsistencies between plaintiff's claims and his treatment records; because many of plaintiff's subjective symptoms were controlled by medication; and because plaintiff engaged in activities that undermined his claim of disability. *Id.*

Plaintiff disagrees with the ALJ's credibility findings. Specifically, plaintiff argues that the ALJ's statement that plaintiff reported to Drs. Finkel and Ghoshal that he stopped having seizures once he had started taking Dilantin is erroneous. Dckt. No. 16 at 11. According to plaintiff, the ALJ confused generalized tonic-clonic seizures with local sensory seizures, and that the latter, as stated by examining physicians, continues to afflict plaintiff. *Id*. at 12. Thus, plaintiff's testimony that he suffers from daily seizures is credible; they are just local sensory seizures rather than generalized tonic-clonic seizures. *Id.* Plaintiff also disagrees with the ALJ's finding that plaintiff's complaints regarding his memory problems were not credible in light of plaintiff's face-to-face interview at the Administration. *Id.* (citing AR at 15). Plaintiff points out that at that interview, plaintiff was "poorly groomed," and could not remember the name of his niece's child with whom he had lived for two years. *Id.* (citing AR at 95).

Finally, plaintiff disagrees with the ALJ's findings that plaintiff was inconsistent about when he ceased working and about his substance abuse. *Id.* at 12-13. Plaintiff contends that there was confusion about when plaintiff stopped working due to company closure (in 1997) and when he stopped working due to his seizures (in 2004), and about plaintiff's prior alcohol and cocaine use, but clarifies that plaintiff stated that he no longer uses alcohol or cocaine (with the exception of a "one time use" of cocaine). *Id.*

Here, the ALJ's credibility findings were thoroughly explained and supported in the ALJ's decision. Although plaintiff may disagree with the specific findings, because the findings were supported by clear and convincing evidence in the record, the court will not second-guess that finding. *Thomas*, 278 F.3d at 959. Therefore, plaintiff's challenge on this ground fails.

////

B.  <u>Limitations Imposed by Psychological Consultative Examiner</u>

Plaintiff further argues that the ALJ improperly ignored the limitations imposed by the psychological consultative examiner, Dr. Finkel. Dckt. No. 16 at 13-15. Specifically, plaintiff contends that Dr. Finkel imposed the following limitations: "Attention and pace are moderately impaired. Concentration is within normal limits. His ability to work over an eight-hour day and attend to a regular work schedule is likely moderate[ly] impaired." *Id.* (citing AR at 201). Plaintiff contends that the ALJ never discredited those findings yet failed to include the limitations in his RFC findings. *Id.* (citing AR at 14). According to plaintiff, the ALJ's limitation to simple unskilled work did not address plaintiff's inability to maintain a normal work pace nor his inability to be punctual, and argues that the error is material because the ALJ relied on the "grids" to satisfy his burden at step five and mental limitations are not factored into the "grids." *Id.* at 14 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101-02 (9th Cir. 1999)).

Defendant counters that plaintiff does not point to any errors in the ALJ's treatment of Dr. Finkel's opinion. Dckt. No. 19 at 8. Defendant contends that plaintiff's argument fails to acknowledge that Dr. Finkel unequivocally opined that plaintiff could perform simple work. *Id.* (citing AR at 201). Defendant further argues that the fact that Dr. Finkel opined that plaintiff had some moderate limitations was not inconsistent with his opinion that plaintiff had the ability to perform simple unskilled work. *Id.*

Here, although plaintiff argues that the ALJ failed to consider all of the limitations imposed by Dr. Finkel, it is clear that the ALJ relied heavily on Dr. Finkel's opinion, and noted the limitations plaintiff contends the ALJ ignored. With regard to Dr. Finkel, the ALJ specifically stated:

> Due to the lack of medical evidence, on March 10, 2006, [plaintiff] attended a consultative psychological evaluation performed by Dr. Barry N. Finkel. He arrived one hour early for his appointment and was alone. He had taken Regional Light Rail to the appointment. He reported his main problem as his left-sided weakness and numbness which he had for approximately four years. He had last worked in 1997. He also reported that he was advised to stop

11

> drinking and after he stopped, he experienced a series of grand mal seizures. He began taking Dilantin and reported no subsequent seizures. He reported that he could shower and dress himself. He vacuumed and did his own laundry. He spent the day watching television or visiting with a neighbor.
>
> Upon evaluating the claimant, Dr. Finkel found that he was able to groom and dress himself appropriately. He could follow simple instruction. He could follow through on simple tasks without direct supervision. He was able to interact appropriately with supervisors and peers. His attention and pace were moderately impaired and his concentration was within normal limits. His ability to work over an eight-hour day and attend to a regular work schedule was likely moderately impaired. He was diagnosed with a mood disorder, secondary to medical issues with depressive features and in remission from alcohol and cocaine abuse. Additionally, he had borderline intellectual functioning[.]
>
> ***
>
> The undersigned accords substantial weight to the opinion of Dr. Finkel and D[r]. McIntire. Their opinions are consistent with and supported by the objective medical evidence.

AR at 12-13, 14.

A review of Dr. Finkel's opinion reveals that although Dr. Finkel opined that plaintiff's attention and pace are moderately impaired and his ability to work over an eight-hour day and attend to a regular work schedule is likely moderately impaired, Dr. Finkel also expressly opined that plaintiff: "is able to groom and dress himself appropriately"; "can follow at least simple instructions"; "should be able to attend to and follow through on at least simple tasks without direct supervision"; and "is able to interact appropriately with supervisors and peers." AR at 201. Dr. Finkel also opined that plaintiff's concentration was "within normal limits" and he is "competent to manage funds." *Id.* Dr. Finkel also assessed a GAF score of 65, which is indicative of only mild psychiatrically-based limitations. *See supra*, n.2. The fact that Dr. Finkel also opined that plaintiff's attention and pace are moderately impaired and his ability to work over an eight-hour day and attend to a regular work schedule is likely moderately impaired does not mean that the ALJ's finding that plaintiff has the residual functional capacity to perform simple unskilled work while adhering to seizure precautions was inconsistent with Dr. Finkel's

opinion or that Dr. Finkel's opinion precluded the ALJ from using the "grids."

The Medical-Vocational Guidelines, also known as "the grids," are "a matrix system for handling claims that involve substantially uniform levels of impairment." *Tackett*, 180 F.3d at 1101 (citing 20 C.F.R. pt. 404, subpt. P, appx. 2). They "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* "The Commissioner's need for efficiency justifies use of the grids at step five where they completely and accurately represent a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work." *Id.* While it is true that significant non-exertional impairments may make reliance on the grids inappropriate, "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1101-02. Here, although Dr. Finkel found that plaintiff's attention and pace are moderately impaired and his ability to work over an eight-hour day and attend to a regular work schedule is likely moderately impaired, he also specifically opined that those limitations would not affect his ability to "attend to and follow through on at least simple tasks." AR at 201. Moreover, the limitations expressed by Dr. Finkel do not significantly limit the range of work permitted by plaintiff's exertional limitations. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (holding that an ALJ did not err by applying the grids and limiting the claimant to simple unskilled work when a medical source had concluded the claimant had "moderate" limitations in multiple areas of mental functioning including exactly the functions relevant in this case: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual with customary tolerance; completing a normal workday and workweek without interruption from psychologically-based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods). Therefore, the ALJ did not improperly apply the grids.

Because it appears that the ALJ properly relied upon Dr. Finkel's opinion, and did not ignore the limitations set forth therein or improperly apply the grids, as plaintiff contends, plaintiff is not entitled to relief on this ground.

C. Plaintiff's Niece's Testimony

Finally, plaintiff contends that the ALJ improperly discredited the Adult Third Party Report completed by plaintiff's niece, Tamanii C. Andrews. Dckt. No. 16 at 15-16. According to plaintiff, his niece's testimony that plaintiff suffers from debilitating forgetfulness shows that plaintiff "would need additional supervision at work and therefore his case would be taken outside of the grids." *Id.* Therefore, according to plaintiff, the ALJ's error in discrediting that testimony as financially self-serving constituted a material error. *Id.*

Defendant counters that the ALJ properly considered the lay witness statements of plaintiff's niece, and properly rejected them because she merely repeated plaintiff's subjective complaints and because they were self-serving in that Ms. Andrews referred to the fact that plaintiff's family could not keep supporting him financially. Dckt. No. 19 at 9 (citing AR 16, 129, 133).

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition); 20 C.F.R. § 404.1513(d)(4) (providing that evidence provided by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work"). Here, the ALJ did not ignore plaintiff's niece's testimony. With regard to that testimony, the ALJ stated:

> The undersigned has also considered the letters of support and Adult Third Party Reports from his niece, Timanii (difficult to read writing) C. Andrews, and his sister Nancy Andrews (difficult to read writing). These letters are accorded minimal weight as they repeat the claimant's subjective complaints, and are self-serving as

14

> they refer to their inability to continue assisting him financially.
> His niece did not report that he had a seizure every day.

AR at 16.

"If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919; *see also Bruce v. Astrue*, 2009 WL 539945, at *1 (9th Cir. Mar. 5, 2009) (finding that the ALJ erred in rejecting, without sufficient comment, the lay witness testimony of the plaintiff's wife); *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (finding that the ALJ erred by failing to consider the lay testimony of two witnesses about how the plaintiff's impairments affected his ability to work). Here, the ALJ specifically stated that he was giving the testimony of plaintiff's niece "minimal weight as they repeat the claimant's subjective complaints, and are self-serving as they refer to their inability to continue assisting him financially." AR at 16. Although plaintiff argues otherwise, it was not improper to regard plaintiff's niece's testimony as duplicative of plaintiff's subjective complaints, which the ALJ properly discredited, and as financially self-serving. *Valentine v. Comm'r of the Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony"); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("The ALJ also considered Shields' "close relationship" with Greger, and that she was possibly "influenced by her desire to help [him]"). Therefore, plaintiff is not entitled to relief on this ground.

VII. CONCLUSION

In conclusion, the court finds that the ALJ's decision is supported by substantial evidence in the record and based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

////

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 31, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

16